IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ROSALIND RUTH COBLE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:11-CV-211 |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION
TO REVERSE DECISION OF THE COMMISSIONER AND TO REMAND THE CASE**

Plaintiff ROSALIND RUTH COBLE brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case be REMANDED for action consistent with this Report and Recommendation.

I.
FACTUAL AND PROCEDURAL BACKGROUND

On December 11, 2008, plaintiff went to the emergency room complaining of shortness of breath. (Transcript [hereinafter Tr.] 323). A CT Scan showed multiple masses throughout plaintiff's lungs and liver, and plaintiff was hospitalized. (*Id.* 478). Although plaintiff remained in the hospital for several days and underwent multiple tests, she was released from the hospital with her condition undiagnosed. (*Id.* 431).

Following her release from the hospital, plaintiff, on December 24, 2008, filed an application for disability insurance benefits alleging she had been unable to work because of a disabling condition beginning on December 11, 2008. (*Id.* 118). In an undated disability report, plaintiff alleged she was unable to work due to nodules on her lungs and liver, asthma, and migraine headaches causing plaintiff pain, fatigue, and depression. (*Id.* 137).

Plaintiff's lung condition, however, appeared to improve, even though doctors remained unable to pinpoint its cause. In April 2009, plaintiff's pulmonologist indicated plaintiff had "desquamative interstitial pneumonitis" but that the condition had "largely resolved with time and with reducing cigarette usage." (*Id.* 449). The doctor reported plaintiff "has very minimal symptoms." (*Id.*). It appears that April 2009 was the conclusion of plaintiff's treatment for her lung condition. In May 2009, plaintiff was denied benefits upon initial consideration. (*Id.* 62). The doctor reviewing plaintiff's medical records for the purposes of that determination concluded plaintiff was able to return to her past relevant work as a housekeeper. (*Id.* 64).

In August 2009, plaintiff was evaluated by Dr. Steven Schneider, a mental health counselor, for complaints of difficulty sleeping. (*Id.* 601). Dr. Schneider noted plaintiff was cooperative, and her thought processes were goal-directed and logical, but her predominant affect was one of sadness. (*Id.* 602). Dr. Schneider concluded plaintiff's memory, concentration, abstract thinking abilities, judgment and insight were all impaired. (*Id.*). He determined her intelligence was below average. (*Id.*). Even though Dr. Schneider reported plaintiff was able to bathe, groom, cook, clean, shop, and handle finances, he stated her "[c]oncentration is poor for most cognitive tasks." (*Id.* 603). At the time of the examination, Dr. Schneider gave plaintiff a Global Assessment of Functioning (GAF) score of sixty-five. (*Id.*).

Less than one month after Dr. Schneider's report, Dr. Leela Reddy, a state agency doctor acting for the Commissioner, performed a psychiatric review technique of plaintiff. This review appears to have been based only upon plaintiff's medical records. (*Id.* 605). Dr. Reddy concluded plaintiff suffers from a medically determinable impairment in the form of a cognitive disorder and a dysthmyic disorder. (*Id.* 606, 608). Dr. Reddy reported plaintiff was moderately limited in maintaining concentration, persistence, or pace. (*Id.* 615). In a Mental Residual Functional Capacity Assessment performed by Dr. Reddy on the same day as the psychiatric review technique, Dr. Reddy concluded plaintiff was moderately limited in her ability to (i) understand and remember detailed instructions; (ii) carry out detailed instructions; (iii) maintain attention and concentration for extended periods; (iv) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (v) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (vi) accept instructions and respond appropriately to criticism from supervisors; (vii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (viii) respond appropriately to changes in the work setting. (*Id.* 619-20). Dr. Reddy then, however, specifically noted, "Clmt can understand remember and carry out detailed instructions, get along with co workers and adjust appropriately to changes in work setting. ive medical evidence does not support the severity of the allegations." (*Id.* 621 (sic throughout)).

In September 2009, plaintiff was denied disability benefits upon reconsideration of the initial denial. (*Id.* 63). The doctor completing the report, Dr. Bob Dodd, indicated he had relied upon Dr. Schneider's report. (*Id.* 78). He made no mention of Dr. Reddy's report. (*See id.*). Dr. Dodd

indicated plaintiff was able to sit, stand and/or walk for six hours out of an eight-hour workday; lift twenty-five pounds frequently, and fifty pounds occasionally. (*Id.* 624). In what appears to be the only reference to Dr. Schneider's report, Dr. Dodd stated plaintiff's difficulty sleeping caused plaintiff no significant limitations. (*Id.*). Dr. Dodd did not otherwise discuss any mental limitations from which plaintiff suffered. (*See id.* 623-30). He concluded plaintiff was able to return to her past relevant work as a cook. (*Id.*). Plaintiff's request for a hearing before an Administrative Law Judge (ALJ) followed. (*Id.* 82).

In June 2010, prior to the hearing before the ALJ, plaintiff attempted suicide. (*Id.* 827). At the time of her admission to the emergency room, plaintiff indicated she was employed part-time by Caprock Home Health as a healthcare provider, though the ALJ's determination recites plaintiff was fired in May 2010 from the position after having worked one month. (*Id.* 20, 827, 833). Plaintiff was admitted to the hospital with depression disorder and a GAF score of fifty-five. (*Id.* 827, 829). She was released the next day against medical advice. (*Id.*).

In July 2010, an ALJ held a hearing to re-evaluate the prior disability determinations. (*Id.* 35-57). Plaintiff was represented by an attorney at the hearing. At the hearing, plaintiff and a vocational expert testified. (*Id.*). The ALJ ultimately issued an opinion, in September 2010, concluding plaintiff was not disabled. (*Id.* 24). He determined plaintiff was not able to return to her past relevant work, but that she was able to perform light-level work with postural limitations and which required detailed but not complex job tasks. The jobs of mailroom clerk, small products assembler, and shipping and receiving clerk were identified by the ALJ. (*Id.* 27). The Appeals Council denied plaintiff relief upon review of the ALJ's determination, at which point plaintiff filed suit in this Court.

II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). The level of review this Court applies is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's Decision and whether any errors of law were made.

III.
## ISSUE PRESENTED

According to plaintiff, the Residual Functional Capacity (RFC) assessed by the ALJ was inconsistent with all of plaintiff's work-related mental limitations found by reviewing doctors. The RFC formed the basis of the hypothetical question posed to the vocational expert (VE). The ALJ, relying on VE testimony given in response to what plaintiff contends was a deficient hypothetical, then denied plaintiff disability benefits. Consequently, plaintiff contends, the Commissioner's decision is not supported by substantial evidence.

IV.
MERITS

*A. The Hypothetical Question in Plaintiff's Case*

At the July 2007 hearing, the ALJ asked the VE the following hypothetical:

> I'm going to ask you to consider a person of the [sic] Mr. Coble's age, education, work history, with a residual functional capacity for light work . . . We're going to put restrictions on posturals such as stooping, kneeling, crouching and crawling to only occasional; no climbing of ladders, ropes and scaffolds. All right, we're also going to restrict -- no concentrated exposure to dust, fumes, chemicals. We're also going to put a restriction, no working on hazards such as unprotected heights or dangerous moving machinery. And we'll put a restriction, *can do detailed but not complex job tasks.*

(Tr. 56) (emphasis added). In response, the VE testified such a person could perform work as a mailroom clerk, a small products assembler, and a shipping and receiving clerk. (*Id.* 57). Plaintiff contends the italicized portion of the question was an incomplete statement of her mental condition, which is much more complicated than "can do detailed but not complex job tasks."

*B. The Residual Functional Capacity Determination*

The hypothetical posed by the ALJ was based on the ALJ's determination of plaintiff's RFC. (Tr. 24, 56). The central question is whether the language of the ALJ's RFC determination, upon which the hypothetical was based, accurately incorporated all of plaintiff's work-related mental limitations.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920. In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset date, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments. *Id.*

If the claimant has severe impairments that do not meet or equal the severity of a listing, the Commissioner must then assess the claimant's RFC. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). This RFC assessment is utilized in making both the step four and step five determinations. 20 C.F.R. § 416.920. In making the RFC assessment and in determining the limitations imposed by a claimant's impairments, the ALJ is instructed to consider the entire record. Social Security Ruling 96-8p, 1996 WL 374184 at * 2 (July 2, 1996).

> RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's ability on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

*Id.* (emphasis in original); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (discussing the ability of a federal court to look to Social Security Administration Rulings in evaluating social security disability cases).

In cases involving mental limitations, the Commissioner has promulgated a Psychiatric Review Technique for evaluating such impairments. 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating the severity of mental impairments at steps two and three of the sequential evaluation process, the technique provides for rating the degree of functional limitation in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c), 416.920a(c). After rating the degree of limitation, the Commissioner determines the severity of the claimant's mental impairment. *Id.* §§ 404.1520a(d), 416.920a(d). The Commissioner has also promulgated regulations regarding assessment of the mental RFC. 20 C.F.R. §§ 404.1545-46, 416.945-46.

The Commissioner has clarified the difference between evaluating the severity of a mental limitation at steps two and three (based upon the four broad functional areas identified in the psychiatric review technique) and evaluating the ability to meet the mental demands of a job at steps four and five. (Tr. 147). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in [the four functional areas]." Social Security Ruling 96-8p, 1996 WL 374184 at * 4. RFC must be expressed in terms of work-related function. *Id.* "Work-related mental activities generally required by competitive, remunerative work include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*; 20 C.F.R. §§ 404.1545(c), 416.945(c) (establishing "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [the] ability to do [work]").

As detailed above, Dr. Schneider evaluated plaintiff and concluded her memory, concentration, abstract thinking abilities, judgment and insight were all impaired. (Tr. 602). Dr. Reddy also determined plaintiff, suffering from a cognitive disorder and dysthmyic disorder, was moderately limited in her ability to perform several work-related activities. She further indicated, however, in a "Functional Capacity Assessment," that plaintiff could understand, remember, and carry out detailed instructions, get along with co-workers, and adjust appropriately to changes in the work environment. (*Id.* 621).

At the ALJ hearing, plaintiff's mental issues were briefly discussed. Plaintiff testified she suffered from depression and anxiety. (*Id.* 43). She stated she was "[d]epressed all the time." (*Id.* 45). She indicated she had attended one session with a psychiatrist (Dr. Schneider), but that the first session was free and she was unable to afford any additional sessions. (*Id.* 46). None of the various mental limitations reported by Dr. Schneider and Dr. Reddy were discussed in detail during the hearing.

The ALJ found plaintiff has a mental impairment of "major depression." (*Id*. 20). He further found the impairment, in combination with plaintiff's other impairment of chronic obstructive pulmonary disease, was classified as "severe." In making his determination, at step three of the five-step analysis, the ALJ relied upon the statements in Dr. Reddy's psychiatric review technique to conclude the combination of severe impairments from which plaintiff suffers did not meet or medically equal the severity of any Listing. (*Id.* 21); *see* 20 C.F.R., Part 404, Subpart P, Apdx 1.

When the ALJ proceeded to step four of the process, he stated, "[t]herefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 21). Following this statement, the ALJ set forth plaintiff's medical evidence of record, including Dr. Schneider's mental evaluation and plaintiff's hospitalizations for suicide attempts. (*Id.* 23, 24). The ALJ failed, however, to conduct any discussion or analysis of the findings Dr. Reddy made in the "Summary Conclusions" section of the Mental Residual Functional Capacity Assessment. (*See id.*). In fact, in making his RFC determination, the ALJ appears to have skipped all of Dr. Reddy's conclusions in specific areas of mental abilities and to have gone straight to the "Functional Capacity Assessment" section of the

mental RFC.

It is noted that in much of the analysis of the ALJ's findings the undersigned is assuming how the ALJ may have treated Dr. Reddy's report. The amount of assumption required in determining how the ALJ's RFC determination was made is necessitated, to some extent, by the ALJ's failure to specifically cite the source of his RFC determination regarding plaintiff's mental limitations. The ALJ described plaintiff as able to perform "detailed but not complex job tasks." (*Id.* 56). There were two doctors who commented on plaintiff's mental limitations. Dr. Schneider indicated plaintiff's memory, concentration, and abstract thinking were impaired, among other areas of mental exertion. (*Id.* 602-03). He did not, however, make any formal conclusions about the level of complexity of tasks plaintiff was able to complete. (*See id.*). In her summary Functional Capacity Assessment, Dr. Reddy stated plaintiff could understand, remember, and carry out detailed instructions. (*Id.* 621). This appears to be as close as Dr. Reddy comes to describing plaintiff's abilities regarding task complexity. It appears the ALJ made the leap from Dr. Reddy's "can . . . carry out detailed instructions" to *his own* determination plaintiff could perform "detailed but not complex job tasks." There is no medical evidenitary analysis leading to this conclusion. In a very liberal interpretation of the ALJ's determination, it appears to be based on Dr. Reddy's conclusions.

If the origin of the ALJ's RFC determination was the language of Dr. Reddy's "Functional Capacity Assessment," the question is whether Dr. Reddy's statement in her "Functional Capacity Assessment," standing alone, provided the ALJ with a sufficient description of plaintiff's mental RFC. It did not. On the mental RFC form completed by Dr. Reddy, the doctor indicated plaintiff was "moderately limited" in "[t]he ability to understand and remember detailed instructions" and in "[t]he ability to carry out detailed instructions." (*Id.* 619). These representations are completely

inconsistent with the doctor's subsequent statement, two pages later on the same form, that plaintiff could understand, remember, and carry out detailed instructions. (*Id.* 621). In accepting the doctor's latter statement of plaintiff's mental abilities, as opposed to the former, the ALJ failed to discuss the inconsistent conclusions and, critically, failed to explain his basis for accepting the one determination over the other. *See* 20 C.F.R. § 404.1527(c)(1), (4) (indicating "[r]egardless of its source, we will evaluate every medical opinion we receive" and "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (indicating the review by the ALJ that is required when a doctor's opinion is internally inconsistent).

Not only was Dr. Reddy's "free-form" statement, upon which the ALJ appears to have relied, inconsistent with her earlier findings on the mental RFC form, it did not fully encapsulate all of the doctor's findings.[1] For example, Dr. Reddy indicated plaintiff was "moderately limited" in her "ability to maintain attention and concentration for extended periods." (Tr. 619). This conclusion appears to be in line with Dr. Schneider's determination that plaintiff's "concentration is poor for most cognitive tasks" and that her concentration is "impaired." (*Id.* 602-03). Just like Dr. Reddy, the ALJ wholly failed either to include any kind of limitation on concentration in the RFC or hypothetical or to explain his reason for not including such a limitation in the RFC or hypothetical. *See Voyles v. Commissioner of the Social Security Admin*, No. 3:10-CV-652-B, 2011 WL 825711, at *9 (N.D. Tex. Feb. 16, 2011) (citing *David v. Astrue*, Civil Action No, 06-3550, 2007 WL

---

[1] The "Functional Capacity Assessment" form itself directs the person completing the form to "[r]ecord the elaborations on the preceding capacities in this section . . . Explain your summary conclusions in narrative form . . . Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations." (Tr. 621). Dr. Reddy's brief explanation is far from the "narrative" explanation and elaboration required. This failing to follow the explicit instructions on the line before her notes are documented makes her findings all the more ambiguous.

2248830, at *4 (E.D. Penn. July 30, 2007) (requiring deficiencies in concentration, persistence or pace to be specified in the hypothetical)).

Likewise, Dr. Reddy stated plaintiff was "moderately limited" in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 619-20). The ALJ again failed to include this limitation in his RFC determination or explain why he omitted such limitation from his analysis. This omission is particularly significant in light of the VE's testimony at the hearing that if the hypothetical person, who the VE had stated could work as a clerk or small products assembler, had more than two unscheduled absences a month, he or she would not be able to perform the jobs he identified. (*Id.* 57 ("Most employers will allow one to two days per month on sick leave. Anything over that on a consistent basis and [sic] generally will not be tolerated.")).

Finally, Dr. Reddy concluded plaintiff was "moderately limited" in her "ability to accept instructions and respond appropriately to criticism from supervisors," in her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and in her "ability to respond appropriately to changes in the work setting."[2] (*Id.* 620). The ALJ failed to discuss any of these limitations in his RFC determination or give his reasons for failing to do so. Likewise, the ALJ did not include or give an explanation for failing to include the limitations reported by Dr. Schneider, including her impaired memory, abstract thinking, and judgment and

---

[2] While it was not part of the ALJ's RFC determination, the Court notes these conclusions by Dr. Reddy completely contradict the doctor's statement on the following page that plaintiff could "get along with co workers (sic) and adjust appropriately to changes in work setting." (Tr. 620-21).

insight. Consequently, given the medical evidence of record, the ALJ's RFC was an inaccurate and incomplete portrayal of plaintiff's mental abilities to perform sustained work activities on a regular and continuing basis. *See* SSR 96-8p, 1996 WL 374184 at *2.

### *C. The Sufficiency of the Hypothetical Question*

Plaintiff's central contention is that the hypothetical asked of the VE by the ALJ was based upon an incomplete RFC determination and was consequently inadequate. The Court, having determined the RFC determination was inadequate, will now discuss how that inadequacy impacts the sustainability of the Commissioner's denial of benefits.

Plaintiff was denied benefits at step five of the five-step evaluation process for determining whether a person is disabled. *See* 20 C.F.R. § 404.1520. In the first four steps of the analysis, the burden of proof rests on claimant, but in the fifth step the burden of proof shifts to the Commissioner to identify other substantial gainful employment in significant numbers in the national economy which is available and which the claimant can engage in and maintain for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). To meet the burden of proof, an ALJ may rely on the testimony of a VE. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). If the ALJ chooses to rely on a VE's testimony, the testimony must be relevant, i.e. related to the claimant's abilities and background. The VE's answer to a sufficient hypothetical question can provide substantial evidence supporting a denial of benefits. *Id.* However, "a determination of non-disability based on . . . a defective question cannot stand." *Id.*; *See Newton v. Chater*, 92 F.2d 688, 694-95 (8th Cir. 1996) (stating "[a] hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant").

In this case, the ALJ specifically indicated he relied on the VE's testimony in denying plaintiff benefits at step five of the analysis. (Tr. 27). The VE's testimony, however, was based upon a hypothetical question which was, in turn, based upon an incomplete RFC determination. Consequently, with the hypothetical the VE was given, he was unable to accurately assess whether jobs exist in the national economy that plaintiff is capable of performing. *See Bowling*, 36 F.3d at 435; *Newton*, 92 F.2d at 694-95. Because the hypothetical question was deficient, the VE's testimony in response to the question failed to provide a proper basis for the determination of non-disability by the ALJ. The ALJ's reliance on the VE's testimony in denying plaintiff benefits cannot stand. *See Bowling*, 36 F.3d at 435. Substantial evidence did not support the ALJ's determination.[3]

## V.
## RECOMMENDATION

For all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff ROSALIND RUTH COBLE not disabled and not entitled to disability benefits be REVERSED and the case be REMANDED for administrative action consistent with this Report and Recommendation.

---

[3] At the hearing before the ALJ, plaintiff was represented by an attorney. The attorney did cross-examine the VE, but his only question was the location in the *Dictionary of Occupational Titles* of the jobs the VE had referenced in his testimony. (Tr. 57-58). Defendant contends the fact that plaintiff's counsel was able to, and in fact did, cross-examine the VE lends support to her contention that the ALJ committed no reversible error in his questioning of the VE. Defendant's argument overlooks the burden of proof. As explained above, in this case the Commissioner denied benefits at step five of the sequential analysis. At that step, the burden of proof shifts from the claimant to the Commissioner. *See Watson*, 288 F.3d at 217. At that point in the disability evaluation, the Commissioner must rely upon substantial evidence for his determination regardless of the quality of the cross-examination conducted on the VE by the claimant's attorney; it was the ALJ's burden to make a determination based on substantial evidence. It was not plaintiff's attorney's job to develop the record for the ALJ. *See id.* Stated differently, the burden was on the ALJ, not the claimant's attorney, to make a proper RFC determination and to question the VE based upon that determination. With this argument, the Commissioner attempts to fault the plaintiff for the ALJ's failings. Such an argument must fail. *See id.*

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 5th day of March, 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).